UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------X
                                :
BEVERLY FORDE                   :
        Petitioner,             :      CIVIL NO.
                                :
        v.                      :      3:03-CV-1424 (EBB)
                                :
MAUREEN P. BAIRD                :
Warden, FCI Danbury            :
                                :
        Respondent.             :
                                :
--------------------------------X

### OPINION AND ORDER

Petitioner Beverly Forde ("Forde") is a practicing Sunni
Muslim incarcerated at the all-female Federal Correctional
Institution in Danbury, Connecticut ("FCI Danbury") where
Maureen P. Baird is Warden ("Respondent").[1]  Male correctional
officers at FCI Danbury, per Bureau of Prisons ("BOP") policy,
engage in both routine and emergency pat searches of inmates to
ensure the safety and security of the facility.  Forde contends
that FCI Danbury's policy of permitting male correctional
officers to pat search her in non-emergency situations
substantially burdens her free exercise of Islam under the
Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §
2000bb et seq., and the First Amendment to the United States

_____

[1] In this Opinion and Order, the term "Respondent" is used both in reference
to current warden of FCI Danbury, Maureen P. Baird, and to previous wardens
at the facility who were named as respondents in this litigation at prior
times.

Constitution.  Through this habeas petition, Forde seeks an individual exemption from non-emergency cross-gender pat searches at FCI Danbury.

A bench trial in this case was held December 14-17, 2009. Based on the following findings of fact and conclusions of law, the Court grants Forde's habeas petition regarding the issue of non-emergency cross-gender pat searches and orders Respondent to grant her an individual exemption to the BOP policy employed at FCI Danbury.[2]

## FINDINGS OF FACT

### I.  Forde's Incarceration

Forde has been incarcerated at FCI Danbury since April 3, 1996.  She is serving a 360-month term of incarceration imposed by the United States District Court for the Eastern District of Virginia on February 27, 1998, following a resentencing.

### II.  Forde's Religious Beliefs

Forde converted to Islam in 1993.  Since then, she has been a religiously observant Sunni Muslim.

Forde believes that her religion requires her to organize her life according to the Qur'an, a foundational holy book of the Islamic faith.  Forde practices her religion by praying five

---

[2] In addition to the issue of non-emergency cross-gender pat searches, Forde's habeas petition raised other issues that were resolved prior to trial.  This Opinion and Order is limited to Forde's petition for an exemption from non-emergency cross-gender pat searches.

times a day, observing the yearly month-long Ramadan fast and consistently wearing a head covering called a *hijab*.

Forde believes that an important requirement of Islam, consistent with her understanding of the teachings of the Qur'an, is the prohibition of physical contact between a woman and men outside her *mahram*—the intimate circle of men composed of a woman's immediate family members whom she cannot legally marry. Forde believes that her religion prohibits her from being touched by men who are not members of her *mahram*. She also believes that the touching of a Muslim woman by a man outside her immediate family may violate the tenets of Islam even if this touching is forced upon her. Forde believes that non-emergency pat searches by male correctional officers at FCI Danbury violate the precepts of her faith.

III.  FCI Danbury and Its Policies

FCI Danbury is a federal prison classified by the BOP as a low security facility. The facility has a rating capacity of 508. The actual population count ranges between about 1,130 and about 1,300. At this time, it houses only female inmates. The ratio of male to female staff at FCI Danbury is approximately two to one.

BOP Program Statement 5521.05 provides the BOP policy for pat searches at federal prisons. The stated purpose of this policy is "to further the safe, secure, and orderly running of

3

its institutions . . . ." §552.10.  According to Program
Statement 5521.05, the program objectives are that (a) inmates
will live and work in a safe and orderly environment; (b)
contraband will be controlled; and (c) searches of inmates and
housing and work areas will be conducted without unnecessary
force and in ways that, insofar as is practical, preserve the
dignity of inmates.

FCI Danbury follows this policy statement, which mandates
that "[s]taff may conduct a pat search of an inmate on a routine
or random basis to control contraband." §552.11.  BOP Policy
Statement 5521.05 defines a pat search as "An inspection of an
inmate, using the hands, that does not require the inmate to
remove clothing.  The inspection includes a search of the
inmate's clothing and personal effects." §552.11.

At trial, Respondent introduced into evidence a pat search
training video illustrating how correctional officers at FCI
Danbury are trained on proper technique.  During a pat search, a
correctional officer orders an inmate to loosen her belt, turn
around, extend her arms and spread her feet apart.  The officer
stands behind the inmate and places his hands with palms flat
against the inmate's body, feeling her collar, shoulders, arms,
armpits and torso.  Officers are instructed to move their hands
in a circular motion against the inmate's body during a pat
search in order to ensure "maximum coverage."  During the

4

search, an officer places his hand between an inmate's breasts, runs his hand down the sternum to the underside of the breast and circles his hand underneath her breast in an upward sweeping motion to the armpit area, where he applies pressure with the searching hand.  Additionally, during a pat search, an officer places his palm flat on the inmate's stomach and, starting at the navel, runs his hand along the inmate's waistband.  Finally, an officer places one hand on the inmate's crotch area, while simultaneously placing one hand flat against the inmate's buttock, and in one motion, runs both hands down her thigh and calf to the ankle.

Pat searches occur on an emergency and non-emergency basis. Testimony at trial established that emergency pat searches may be conducted when there is a disturbance at a prison or if correctional officers have specific information that an individual inmate is in possession of a dangerous item of contraband, like a weapon.  Conversely, testimony at trial established that most non-emergency pat searches at FCI Danbury occur at times when prisoners could have had access to contraband items such as when their shifts at work programs are over, after meals and in the special housing unit ("SHU"), a separate housing area of the prison used for discipline or investigation.

FCI Danbury will exempt prisoners from cross-gender pat searches for mental health reasons.  During the tenure of former warden Donna Zickefoose ("Zickefoose"), two mental health exemptions were issued.  According to Zickefoose's testimony, while she was warden, she was never advised of an incident when either of the women granted exemptions from the cross-gender pat search policy compromised security.  Zickefoose also never had to reschedule staff because of the two inmates who had exemptions from cross-gender pat searches.

While BOP policy regarding pat searches permits cross-gender searches, the policy is different for visual searches, commonly known as strip searches.  BOP Program Statement 5521.05, followed at FCI Danbury, states the rule for visual searches: "Staff of the same sex as the inmate shall make the [visual] search, except where circumstances are such that delay would mean the likely loss of contraband.  Where staff of the opposite sex makes a visual search, staff shall document the reasons for the opposite sex search in the inmate's central file."  §552.11.  Implementing information for this rule is also provided: "While post assignments may not be restricted on the basis of sex, a staff member may not perform routine visual searches of inmates of the opposite sex, such as could be required by assignment to such posts as the visiting room and receiving and discharge units."  §552.11.  Visual searches are

appropriate, for example, prior to "placement in a special housing unit (see 28 CFR 541, subpart B), [after] leaving the institution, or [prior to] re-entry into an institution after contact with the public (after a community trip, court transfer, or after a 'contact' visit in a visiting room) . . . ." §552.11.

At FCI Danbury, visual searches regularly occur at the visiting room, the receiving and discharge location and at the SHU.  Zickefoose testified that female correctional officers were not specifically assigned to locations where visual searches were to occur, but that, if no female correctional officers were at the location when a female inmate was to be visually searched, one would need to be relieved from another post and sent where needed to conduct the search.  As a result, Zickefoose said that correctional officers usually made sure amongst themselves that a female correctional officer was present at times where visual searches were to be conducted.

Respondent presented evidence from Zickefoose and a corrections expert witness that granting Forde an exemption from non-emergency cross-gender pat searches would pose difficulties in prison operations.  Specifically, Respondent offered testimony that calling female correctional officers to the location every time Forde is to be pat searched if no female correctional officer is already present would cause systematic

difficulties because removing the female correctional officer
from her post would leave that position unoccupied.  Respondent
offered testimony that the precision operation of a prison
facility does not allow for such on-the-fly staffing
adjustments.  Forde presented expert testimony that, in many
circumstances, the summoning of a female correctional officer to
conduct a pat search in a non-emergency situation could involve
nothing more than an immaterial minute or two delay.

Under the Master Agreement between the correctional
officers' union and the BOP governing labor relations at FCI
Danbury, staff assignments at the facility are made on the basis
of seniority through a bidding process.  Respondent offered
testimony that because the gender ratio of male to female staff
at FCI Danbury is two to one, having female correctional
officers present whenever Forde must be pat searched would
require circumventing the Master Agreement.

IV.  Pat Searches of Forde

Forde testified that she had been pat searched by male
correctional officers at FCI Danbury on many non-emergency
occasions and that some of those searches were conducted in the
presence of female correctional officers.

At times, when Forde requested that she be pat searched by
a woman instead of a man because of her religious beliefs, she
was accommodated, at other times, she was searched by male

correctional officers.  At trial, Forde estimated that about
half of her requests to be pat searched by a female correctional
officer were granted.

At trial, Forde detailed specific occasions when she was
pat searched by male prison correctional officers when it
appeared that female correctional officers were available.  She
specifically testified about an occasion in 2007 when she was
pat searched by a male officer following the evening meal of
Ramadan, an Islamic religious holiday.  She also described a
time in 2004 when she was sent to FCI Danbury's SHU for
disobeying a direct order—namely refusing a pat search by a male
staff member.  On that occasion, Forde exited the rear door of
the food service area, where the inmates ate lunch, and was
ordered by a male correctional officer to submit to a pat
search.  Forde requested that a female correctional officer pat
search her instead.  A female staff member came to the location,
but did not pat search Forde.  A second female staff member then
came to the location and strip searched Forde in the auditorium.
Forde asked why she was strip searched and was told that the
male officer had requested it.  Then, Forde was sent to the SHU
for two or three weeks.  No disciplinary report was filed.

V.  Procedural History

On November 11, 2004, Forde filed a Request for
Administrative Remedy, requesting an exemption from the cross-

gender pat search policy.  William Willingham ("Willingham"), who was warden at the time, denied the request on December 3, 2004, citing program statements concerning pat searches.  Forde subsequently appealed the decision to the Northeast Regional Director and National Inmate Appeals Administrator, who both denied the appeal for the same reasons as Willingham.

Forde filed a *pro se* action against Willingham on August 21, 2003.  Respondent moved to dismiss on September 23, 2004. On June 22, 2005, the Court denied the motion and ordered Forde to file an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241.

Forde filed a petition for a writ of habeas corpus on July 22, 2005 and Respondent moved to dismiss the petition on October 7, 2005.  The Court converted Respondent's motion to dismiss into a motion for summary judgment on April 26, 2006.  The Court partially granted and partially denied the converted motion for summary judgment on April 2, 2009.  A court trial of the remaining issues was held December 14-17, 2009.

<b><u>CONCLUSIONS OF LAW</u></b>

<u>I.  RFRA</u>

RFRA protects the free exercise of religion.  It mandates that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless it demonstrates that application

of the burden to the person "(1) is in furtherance of a
compelling governmental interest; and (2) is the least
restrictive means of furthering that compelling governmental
interest."  42 U.S.C. § 2000bb-1(a),(b).  Although the Supreme
Court held that Congress exceeded its authority in making RFRA
applicable against state and local governments, City of Boerne
v. Flores, 521 U.S. 507 (1997), the Court also confirmed RFRA's
validity as applied to actions of the federal government.
Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546
U.S. 418 (2006); see also Hankins v. Lyght, 441 F.3d 96, 106 (2d
Cir. 2006) ("We join the other circuits in holding that the RFRA
is constitutional as applied to federal law under the Necessary
and Proper Clause of the Constitution.").  RFRA authorizes any
"person whose religious exercise has been burdened" in violation
of the statute to "assert that violation as a claim or defense
in a judicial proceeding and obtain appropriate relief . . . ."
42 U.S.C. § 2000bb-1(c).

     To adjudicate Forde's RFRA claim, the Court must apply a
burden-shifting analysis.  Gonzales, 546 U.S. at 428-29.  First,
Forde must demonstrate that the government substantially
burdened her sincere exercise of religion.  See id.; 42 U. S. C.
§ 2000bb-1(a), (c).  Then, if she satisfies her prima facie
case, the burdens of evidence and persuasion shift to Respondent
to demonstrate that the burden imposed on Forde's exercise of

religion "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that government interest."  42 U.S.C. §§ 2000bb-1(b), 2000bb-2(3).

A.  By Failing to Grant Forde an Exemption, Respondent Has Substantially Burdened Her Right to Freely Exercise Her Religion

As noted, the first step in Forde's RFRA challenge is for her to establish that cross-gender pat searches at FCI Danbury substantially burden her sincere religious exercise.

At trial, Forde established that she is a practicing Sunni Muslim.  Respondent did not contest this.

Respondent also does not contest that it is a general precept of Sunni Islam that Muslim women may not allow men outside their *mahrams* to touch them.

Forde offered uncontroverted testimony establishing that pat searches by male correctional officers are deeply offensive to her understanding of the religious importance Islam places on the modesty of Muslim women and the sanctity of the *mahram*.

Because Respondent neither challenges the sincerity of Forde's beliefs, nor that they are religious in nature, Forde's only burden to sustain a prima facie RFRA claim is to demonstrate that Respondent substantially burdened her free exercise rights.

The Second Circuit "has considered the question of what constitutes a 'substantial burden' on religious free exercise, in the course of interpreting . . . [RFRA]." Meachin v. McGuinnis, 357 F.3d 197, 202 n.4 (2d Cir. 2004). According to the court, a substantial burden is a situation where the state "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (quoting Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996)).

At trial, Forde established that on many occasions she was pat searched by male correctional officers and that only approximately half of her requests for same-gender pat searches had been honored. Consequently, the burden placed on Forde's free exercise is not de minimis.

Respondent claims that because Forde is pat searched by male correctional officers involuntarily, the precepts of Islam are never offended because the religion only mandates that a woman not permit a man outside her mahram to touch her. Consequently, Respondent concludes, correctional officers at FCI Danbury have not substantially burdened Forde's free exercise rights.

To conclude that Forde is mistaken regarding whether her religious beliefs are offended by cross-gender pat searches—and therefore hold that her free exercise rights have not been substantially burdened—would contravene clear precedent. In

13

Ford v. McGinnis, the Second Circuit chastised the district court for "looking behind" the inmate's sincerely held belief regarding the requirements for a Islamic feast meal and held that "the district court impermissibly confronted what is, in essence, the 'ecclesiastical question' of whether, under Islam, the postponed meal retained religious meaning [if provided subsequent to the date the holiday was celebrated]." 352 F.3d 582, 590 (2d Cir. 2003). In other words, the district court improperly relied on prison employees' interpretations of the Islamic faith to determine whether a religious violation had occurred. The Second Circuit plainly stated that "[t]he opinions of the . . . [prison's] religious authorities cannot trump the plaintiff's sincere and religious belief." Id.

Consequently, what matters here is that Forde sincerely believes that being pat searched by male correctional officers violates her understanding of the tenants of Islam.[3] That Respondent presented evidence that this belief may not be universally held by all Muslims is without significance.[4]

The Court's conclusion regarding how Respondent's policy of allowing Forde to be pat searched by male correctional officers

_____

[3] The Court notes that Forde presented an expert witness on the Islamic faith who testified that Forde's belief that being touched by males outside of her mahram does offend Islam, regardless of whether she consented to the touching.
[4] The Court notes, though, that other Muslims have complained that cross-gender pat searches in prisons contravene their religious beliefs. See, e.g., Anderson v. Pinto, 01 Civ. 961S(LBS), 2002 U.S. Dist. LEXIS 12967 (S.D.N.Y. July 16, 2002); Rivera v. Smith, 483 N.Y.S.2d 187 (N.Y. 1984).

substantially burdens her free exercise rights is analogous to
the Second Circuit's conclusion in Jolly.  In Jolly, the inmate
was presented with a Hobson's choice of either allowing prison
officials to inject him with a foreign subject to test for
tuberculosis—thus violating his sincerely held religious beliefs
as follower of the Rastafari movement—or refusing and being sent
to the medical keeplock.  76 F.3d at 471-72.  The Second Circuit
held that "[t]he choice . . . presented by the state—either
submit[] to the [tuberculosis] test or adher[e] to one's beliefs
and endur[e] medical keeplock—constitutes a substantial burden."
Id. at 477.  Likewise, Forde can allow male correctional
officers to pat search her—thus violating her understanding of
the precepts of Islam—or she can refuse and risk being sent to
the SHU or otherwise disciplined.  Indeed, Forde presented
evidence that, on one occasion in 2004, she was sent to the SHU
for failing to follow a direct order when she requested that a
female correctional officer pat search her instead of a male
officer.  Just as the Second Circuit held that Jolly's free
exercise rights were substantially burdened by the absence of
any viable choice, the Court holds that Forde's free exercise
rights are substantially burdened in the same manner.

   B.  FCI Danbury Failed to Sustain Its Burdens

   Under RFRA "[o]nce a plaintiff makes a threshold showing of
a substantial burden on the right of free exercise, the

government must demonstrate that the application of the burden to the individual furthers a compelling state interest and is the least restrictive means of furthering that interest." Jolly, 76. F.3d at 477.

### 1.  FCI Danbury Alleges Two Compelling Governmental Interests in Cross-Gender Pat Searches

Respondent alleges two compelling governmental interests in support of FCI Danbury's cross-gender pat search policy—(1) maintaining the safety and security of the facility and (2) avoiding staffing and employment problems.

### a.  Respondent Alleges Compelling Governmental Interests in Safety and Security

Respondent first claims that pat searches are necessary to ensure the safety and security of FCI Danbury and thus, if male correctional officers are not permitted to pat search Forde, the facility will not be safe and secure.  Consequently, Respondent concludes, cross-gender pat searches are an integral part of ensuring the safety and security of the facility.  Respondent constructs a strawman through this argument and focuses on the *pat search* component of cross-gender pat searches, rather than the *cross-gender* component of those searches.[5]  Neither party

---

[5]  Indeed, this distinction was fully displayed in direct examination of Respondent's expert witness on corrections.  Upon being asked "What is your expert opinion . . . as it relates to the penological or correctional value and impropriety [sic] of cross-gender pat searches as applied to Ms. Forde?" Respondent's witness answered "It's my opinion that cross-gender pat searches

disputes that Respondent has a compelling interest in maintaining a safe and secure facility at FCI Danbury or that pat searches are useful tools in promoting those goals. Instead, Forde argues that there is no compelling governmental interest in *cross-gender* pat searches. Consequently, it is Respondent's burden to prove that pat searches performed on Forde by male correctional officers serve a compelling governmental interest, not merely that pat searches themselves serve a compelling governmental interest.

Respondent did not satisfy that burden. She offered no evidence establishing a compelling governmental interest in permitting male correctional officers to pat search Forde. Indeed, Forde presented evidence showing that there may be penological *disadvantages* to cross-gender pat searches due to the possibility of falsified reports of sexual harassment lodged against male correctional officers by female inmates and the possibility that male officers would pat search female inmates less thoroughly to avoid such false claims—an assertion that Respondent contested, though failed to disprove. Respondent therefore failed to sustain her burden of demonstrating that the safety and security of FCI Danbury are promoted through cross-

---

are necessary. And they serve a purpose by preventing contraband from being conducted within the institution. It also serves as a deterrent to inmates to engage in that activity. And that by having pat searches done on inmates it helps to keep a secure facility." The Court notes that the witness's answer, recounted above in its entirety, did not mention why *cross-gender* pat searches are necessary at all.

gender pat searches instead of same-gender pat searches.[6]  All of
Respondent's arguments regarding how and why cross-gender pat
searches promote safety and security at FCI Danbury are actually
related to the staffing of the facility, not to its safety and
security.

> ### b.  Respondent Alleges Compelling Governmental
> ### Interests in Staffing and Employment

Respondent's argument that FCI Danbury has a compelling
interest in avoiding staffing and employment issues has three
sub-components.  First, Respondent alleges that the operational
costs of having to summon a female correctional officer every
time Forde needs to be pat searched would substantially hinder
the operation of FCI Danbury.  Second, Respondent alleges that
FCI Danbury is required to make its staffing assignments
according to seniority alone and without regard to gender

---

[6] Other prisons have argued that cross-gender pat searches are necessary to
maintain security without actually arguing that the gender of the
correctional officer is relevant to the efficacy of the search conducted.  In
his concurrence in Jordan v. Gardner, 986 F.2d 1521, 1537 (9th Cir. 1993) (en
banc) (Reinhardt, J. concurring), Judge Reinhardt emphasized that "[a]s the
majority opinion notes, the district court found that the prison's security
concerns do not justify random and routine cross-gender searches."  Id.
(emphasis in original).  Judge Reinhardt then discussed the testimony of the
prison superintendent: "When Superintendent Vail was asked at his deposition,
'Specifically, what security issues again are you responding to in having
male officers perform pat searches?' he testified, 'I am not responding to a
security issue by having male officers perform the pat searches.  I'm
responding to security issues by moving towards that a pat search is
conducted at random locations around the facility.  In order to do that and
not be in a position where I am open to charges of sexual discrimination, it
requires that all officers be allowed to conduct pat searches.'"  Id. at 1538
(emphasis in original).  Emphasizing this point, Judge Reinhardt noted that
"prison security was not impaired in the slightest by the prohibition against
cross-gender searches."  Id.  The issue raised by Superintendent Vail, just
as by Respondent here, concerned staffing and employment, not safety and
security.

because to do otherwise would contravene the Master Agreement in place between the BOP and the prison officers' union.  Third, Respondent claims that to alter the staffing at FCI Danbury to ensure that female correctional officers were always available to pat search Forde would result in violations of Title VII of the Civil Rights Act of 1964, which prohibits discrimination by covered employers on the basis of race, color, religion, sex or national origin.

Respondent did not present persuasive evidence that these staffing and employment issues present a compelling governmental interest.  Respondent's concerns about the functioning of the facility if female correctional officers need to be called to the location if Forde is to be pat searched was refuted both by Forde's expert witness in corrections and by the fact that the facility does just that if a visual search is required, but no female correctional officer is present.  Respondent presented no persuasive evidence that calling femal correctional officers to the location if Forde is to be pat searched contravenes the Master Agreement (which deals with staffing, not summoning, correctional officers to a specific location).  Finally, Respondent offered no evidence that granting Forde an exemption from non-emergency cross-gender pat searches would lead FCI Danbury to violate Title VII at all.

Moreover, Respondent failed to distinguish between why granting Forde an exemption from routine pat searches by male correctional officers would be catastrophic, but the mental health exemptions currently in place do not lead to chaos. Zickefoose neither identified any negative impacts on employment that resulted from the individual pat search exemptions that were in place during her tenure at FCI Danbury, nor did she identify specific employment issues that would result from granting Forde an exemption.  Finally, the fact that the institution already prohibits routine visual searches by male staff suggests that gender-based staff movements is eminently possible.

> 2.  Respondent Failed to Establish that Cross-Gender
> Pat Searches are the Least Restrictive Means of
> Addressing Either Purported Compelling Governmental
> Interest

However, even assuming, *arguendo*, that Respondent met her burden of proving that cross-gender pat searches are the least restrictive means of achieving compelling governmental interests in either safety and security or staffing and employment, she failed to demonstrate that conducting cross-gender pat searches of Forde is the least restrictive means of accomplishing those goals.

Following this Court's ruling on Forde's converted motion for summary judgment, but prior to trial, the Second Circuit considered for the first time the issue of under what circumstances a challenged practice constitutes the least restrictive means of furthering a state's compelling interests. Jova v. Smith, 582 F.3d 410, 416 (2d Cir. 2009). In the context of a Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., challenge, the court noted that other circuits "have required that, for a state to demonstrate that its practice is the least restrictive means, it must show that it 'actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.'" Jova, 582 F.3d at 416 (quoting Warsoldier v. Woodford, 418 F.3d 989, 999 (9th Cir. 2005)). The court also noted that "other circuits have observed that 'the failure of a defendant to explain why another institution with the same compelling interests was able to accommodate the same religious practices may constitute a failure to establish that the defendant was using the least restrictive means.'" Jova, 582 F.3d at 416 (quoting Warsoldier, 418 F.3d at 1000).

As detailed above, Jova suggests that Respondent ought to have offered evidence at trial of having considered less restrictive practices to cross-gender pat searches of Forde. Respondent failed to do so. As discussed, Respondent presented

testimony that requiring Forde to only be pat searched by female correctional officers could significantly hamper the functioning of the institution.  However, at no point did Respondent present evidence that she considered any alternatives to the current system or present persuasive evidence of why no alternative system was possible.  Because the burden rests with the government, it is insufficient for Respondent to simply say that something cannot be done without exploring alternatives.  In this case, either Respondent considered no alternative means to accommodating Forde's freedom of religious exercise, or Respondent simply failed to present at trial why those alternative means failed.

Similarly, Respondent failed to present any evidence as to why many state penal institutions forbid non-emergency cross-gender pat searches, but FCI Danbury is incapable of doing the same.  Forde offered copious evidence of how the BOP's policy is not in harmony with the majority of state penal policies.  Respondent offered no evidence as to why almost all of the states prohibit cross-gender pat searches, but FCI Danbury cannot accommodate Forde's request for an exemption.

Turning to Respondent's specific alleged compelling interests, on the issue of security, "it is well established that courts, when applying strict scrutiny under RFRA, 'must give due deference to the judgment of prison officials, given

their expertise and the significant security concerns implicated
by prison regulations.' Hoevenaar v. Lazaroff, 422 F.3d 366,
370 (6th Cir. 2005) (citing Murphy v. Mo. Dep't of Corr., 372
F.3d 979, 987 (8th Cir. 2004))." Tabbaa v. Chertoff, 509 F.3d
89, 106 (2d Cir. 2007).  However, Respondent cannot simply claim
that the safety or security of FCI Danbury will be negatively
impacted by exempting Forde from *cross-gender* pat searches
without showing evidence of how the facility would be negatively
impacted.  See Jolly, 76 F.3d at 479 (prison policy not
insulated from scrutiny "merely because defendants brandish the
concepts of public health and safety").  Consequently, giving
all appropriate deference to the Respondent's judgment and due
consideration to the factors discussed in Jova, the Court
concludes that Respondent failed to establish that FCI Danbury's
policy—and, indeed, the BOP's policy—regarding cross-gender pat
searches is the least restrictive means of furthering the
institution's compelling interests in maintaining a safe and
secure facility.  Simply put, Respondent failed to prove that
cross-gender pat searches, instead of same-gender pat searches,
are necessary to insure the safety and security of FCI Danbury,
let alone establish that cross-gender pat searches are the least
restrictive means of ensuring the safety and security of the
facility.

23

With regard to Respondent's contention that summoning female correctional officers every time Forde must be subjected to a pat search would create an impermissible strain on the normal operations of FCI Danbury, Respondent fails to explain why the institution does not face the same impermissible strains when the two inmates who have been granted exemptions from cross-gender pat searches must be subjected to pat searches. Respondent's failure to explain why granting an exemption to Forde would pose an impermissible strain that is not posed by the exemptions it has granted to others entirely undercuts its conclusory argument requiring the necessity of its cross-gender pat search policy.

The same is true with regard to Respondent's claim that staffing female correctional officers every time Forde must be pat searched would contravene the Master Agreement between FCI Danbury and the officers' union that requires staffing to be based only on seniority.  Respondent offers no explanation as to why such staffing issues are not implicated by the other exemptions already in place or by its practice of gender-based staffing for visual searches.  This is especially puzzling in light of the fact that, like visual searches, the vast majority of pat searches occur at predictable times and places.

Additionally, the notion that exempting Forde from cross-gender pat searches would lead to prison staffing issues in

terms of seniority, promotions or assignments is purely
speculative and without evidentiary support.  Indeed, when
confronting a prison-wide ban on cross-gender pat searches, the
Ninth Circuit discovered just the contrary.  "At trial, the
prison officials' own witnesses testified that not a single bid
had been refused, promotion denied, nor guard replaced as a
result of the ban on routine cross-gender clothed body
searches."  Jordan, 986 F.2d at 1527.  Further, gender-based
assignment of shifts, even where it prevents correctional
officers from selecting preferred assignments, is a "minimal
restriction" that can be tolerated.  Tipler v. Douglas County,
482 F.3d 1023, 1027 (8th Cir. 2007); see also Robino v. Iranon,
145 F.3d 1109, 1110 (9th Cir. 1998); Jordan, 986 F.2d at 1539
(Reinhardt, J. concurring) ("Minor adjustments of staff
schedules and job responsibilities do not constitute the type of
administrative burden that justifies overriding constitutional
rights; nor does the need to modify a provision of a labor
contract.  The adjustments pointed to by the prison officials
[that barring male guards from conducting suspicionless searches
would require some adjustments of staff schedules and job
responsibilities, and the overriding of the bid system in the
collective bargaining agreement, possibly leading to litigation
by the guards' union] are *de minimis* indeed.").

Finally, Respondent failed to offer evidence in support of her argument that disallowing cross-gender pat searches of Forde would contravene Title VII of the Civil Rights Act of 1964. Given Respondent's substantial burden under RFRA, the mere allegation that Title VII employment issues could result from granting an exemption to Forde from cross-gender pat searches is a woefully insufficient way of demonstrating that cross-gender pat searches are the least restrictive means of avoiding equal employment problems.  Indeed, even if male employment rights at FCI Danbury might collide with Forde's free exercise rights, those employment rights would not necessarily prevail.  As the Second Circuit stated in comparing employment rights with privacy rights, "[r]esolution of such cases requires a careful inquiry as to whether the competing interests can be satisfactorily accommodated before deciding whether one interest must be vindicated to the detriment of the other."  Forts v. Ward, 621 F.2d 1210, 1212 (2d Cir. 1980).  For these reasons, Respondent failed to meet her burden of proving that cross-gender pat searches are the best way to avoid Title VII problems while providing Forde with the free exercise rights that RFRA affords her.  Moreover, other courts have determined that cross-gender pat searches themselves do not always ensure equal employment opportunities.  See Jordan, 986 F.2d at 1527 ("Nor do cross-gender clothed body searches ensure equal employment

opportunities for male guards.  The conflict between the right
of one sex not to be discriminated against in job opportunities
and the other to maintain some level of privacy 'has normally
been resolved by attempting to accommodate both interests
through adjustments in scheduling and job responsibilities for
the guards.'" (quoting Smith v. Fairman, 678 F.2d 52, 55 (7th
Cir. 1982))).

    In contrast to all of Respondent's unsupported arguments
regarding why cross-gender pat searches of Forde are the least
restrictive means of securing and staffing FCI Danbury, Forde's
evidence showed that a large majority of prison systems in the
United States already prohibit non-emergency cross-gender pat
searches.  As the Second Circuit noted, such evidence can be
persuasive in demonstrating that an institution has failed to
use the least restrictive means necessary to meet compelling
governmental interests.  See Jova, 582 F.3d at 416.  This is
especially true here because Respondent offered no evidence that
FCI Danbury is unique vis-à-vis other penitentiaries.  See,
e.g., Rivera, 483 N.Y.S.2d 187.

    In sum, even if Respondent had sustained her burden in
demonstrating the existence of compelling governmental interests
that permitted Forde to be pat searched by male correctional
officers, she certainly failed to sustain her burden of

establishing that those searches are the least restrictive means
of furthering such compelling interests.

II.  First Amendment Claim

    Forde's First Amendment claim is based on the same alleged
violation of her religious exercise rights as her RFRA claim.
Because courts generally do not reach constitutional issues if a
case can be resolved on statutory grounds, and because the Court
finds a violation of RFRA, it need not reach the constitutional
question of whether FCI Danbury's policy violates the First
Amendment.  See, e.g., Tyler v. Douglas, 280 F.3d 116, 121 (2d
Cir. 2001); United States v. Leon, 766 F.2d 77, 78 (2d Cir.
1985) ("We follow the rule that a court should not reach
constitutional issues when there are other, nonconstitutional
grounds upon which it can resolve the case.  That is to say, a
court should decide no more than is necessary.").

**ORDER OF JUDGMENT**

    Based on the foregoing facts and conclusions of law, the
Court ORDERS Respondent to grant Petitioner an individual
exemption to the policy of non-emergency cross-gender pat
searches during her incarceration at FCI Danbury.

The Clerk is directed to enter judgment in accordance with the foregoing and to close this case.

SO ORDERED

_____/s/_____
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 25th day of June, 2010.